[Crim. No. 7591.   Second Dist., Div. Four.   Jan. 30, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. MARSHALL CORTNEY WHYTE et al., Defendants and Respondents.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Harry Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Burton Marks for Defendants and Respondents.

JEFFERSON, J.—The People appeal from an order granting defendants' motion to set aside an information under Penal Code section 995 charging defendants with bookmaking in violation of section 337a of the Penal Code in three counts, subdivisions 1, 2 and 4. The People concede as to defendant Gillett, the evidence was not sufficient as to count III.

Taylor L. Searcy, one of the arresting officers, testified as follows: Approximately 20 days prior to the arrest of defendants he was furnished with a formal vice complaint from one of his superiors showing that an anonymous source of information had stated that telephone number DUnkirk 31524 was being used for illegal purposes, to wit, bookmaking; the person answering the phone was using the name of ''Whitey'' and that it was in Apartment 34 of 230 South Coronado; during the 20 days prior to the arrest, this officer had put the Dunkirk number through the telephone company and had determined that this number was registered to a Lee B. O'Neal; prior to making the arrest of defendants, he checked the mail box at the above location and saw the name ''Marshall C. Whyte'' on the mail box for Apartment 34; and he

also had learned defendant Whyte had a previous bookmaking arrest.

Officer Searcy further testified: He dialed DUnkirk 31524 and a female voice answered the phone; he stated to her he had been betting with Bill at the bar and Bill told him if ever he could not get in touch with him he was to phone this number and ask for Whitey, and he would be given a phone number where he could place some bets; he called the phone number and asked, ''Is Whitey there?'' A female voice stated, ''Whitey isn't here, but I expect him to phone back in about ten minutes. Who is this Bill?'' The officer said, ''It is Bill Citron.'' The female voice said, ''Where do you know him from?'' The officer stated Bill was the owner of the bar down here and the female voice said, ''Do you mean the Squeeze Inn?'' The officer stated, ''Yes.'' The female voice said, ''Well, I am not sure I know Bill by that name. You will have to wait until Whitey calls back and I will ask him. What is your name?'' Officer Searcy further testified he told her his name and then stated he wanted to get down on the seventh race at Golden Gate and could she go ahead and take the action and wait and then when Whitey phoned in have him verify it. The female voice stated, ''No, I can't take it that way and it is 3:30 now so you won't be able to make it for the seventh. You had better call back after a while.'' At this time the female hung up. Approximately 15 minutes later the officer again called the same number. The female voice answered again and he stated who he was and asked if Whitey had phoned. The female stated he had not and the officer asked her how he was going to get some bets down. He said that it was getting late. She said, ''Well, I don't know. If you have been betting with Bill why don't you give it to him?'' The officer stated he wasn't at the bar and didn't know where to get in touch with him. The female said, ''Well, I don't know what you are going to do.'' The officer stated, ''Well, if I call Lee and have him say that I am all right, will you take it then?'' The female said, ''Lee who?'' The officer said, ''Lee O'Neal.'' The female said, ''Well, he is at the bar now,'' and she gave him the telephone number of the bar and said, ''If you call him and he says it is all right, then it will be OK and I will take it.''

After these developments took place, the following events relating to the arrest of defendants occurred: Officer Searcy, after holding the conversation set forth above, signalled to his partner Officer Russell, who was standing outside the apart-

ment building at 230 South Coronado, from where he was telephoning. He heard a commotion at the other end of the line and someone picked up the phone and he heard Officer Russell state, "Searcy, we have got them. Come on in. This is Russell." He then left the phone and joined his partner Officer Russell in Apartment 34 at 230 South Coronado.

Neither Searcy nor his partner had a warrant to arrest either of these defendants or to search the premises at 230 South Coronado.

Officer Russell testified he stood at the entrance of 230 South Coronado in such a position he could see the front entrance to Apartment 34. While he was at that location he did not observe anyone enter or leave Apartment 34. After receiving the signal from his fellow officer, he ran up the short flight of stairs across the patio approaching in front of Apartment 34. He started to go up the stairway of Apartment 34 and at this time saw defendant Whyte standing in the window of the kitchen of that apartment. Defendant Whyte was looking directly toward him and Whyte immediately disappeared from his view, going in a southerly direction inside of the apartment. He further testified he continued up the front stairs of Apartment 34, forced entry through the front door and as he came into the living room saw no one but heard what sounded like water running in the bathroom. He observed defendant Whyte and codefendant Gillett in the hallway coming from the direction of the bathroom. He went past both of these defendants and into the bathroom, threw the toilet lid up and retrieved from the toilet a copy of the National Daily Reporter for Thursday, November 10, 1960. He noticed a telephone on the dressing table of the bedroom. He used the phone and established contact with Officer Searcy stating, "This is Russell. We have got them. Come on in."

He further testified he went into the living room where both defendants were standing and saw a table on which was a portable Zenith radio and two pieces of note paper with notations on them, as well as a notebook from which two pieces of paper had been torn. These two pieces of paper contained notations and the radio was on, broadcasting race results.

It was stipulated Officer Taylor L. Searcy was an expert in the manner and method in which bookmaking is conducted in Los Angeles County and the paraphernalia used therein. The officer testified the exhibits he examined contained letters and numbers signifying horses, races and race tracks which were listed in the exhibits, as well as the amount wagered on

such horses. He further testified he had heard a female voice over the phone that was similar to the voice of the defendant Gillett; while he was at the location the phone DUnkirk 31770 rang and he had a conversation, with a male voice who asked for Whitey, relating to a race being run at Garden State track. He further testified as an expert in his opinion the location in question was a "phone spot."

The foregoing evidence as contained in the reporter's transcript of the preliminary hearing was sufficient to support the information unless it was illegally obtained.

We hold the evidence was legally obtained and the arrest was lawful.

■ A reasonable search without a search warrant may be made of a person and premises as an incident to a lawful arrest.

Penal Code section 836 provides in part:

"A peace officer . . . may without a warrant, arrest a person;

". . . . . . . . . . .

"2. When a person arrested has committed a felony, although not in his presence.

"3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

■ As stated in *People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967] : "Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. . . . Probable cause may exist even though there may be some room for doubt. . . . ■ The test in such case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial."

■ The rule should not be understood as placing the ordinary man, of ordinary care and prudence, and the officer experienced in the detection of bookmaking offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who has had extensive training and experience in the devious and cunning devices used by bookmakers. (*People* v. *Williams*, 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].) Since the defendants' arrest was lawful, a search incident thereto was legal. (*People* v. *Ruiz*, 196 Cal.App.2d 695, 701 [16 Cal.Rptr. 855].)

The order is affirmed as to defendant Gillett, as to count III and reversed as to counts I and II.

As to the defendant Whyte, the order is reversed as to all counts.

Burke, P. J., and Balthis, J., concurred.