[Crim. No. 5309. First Dist., Div. One. Apr. 13, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. McFARLAND BEASLEY et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Plaintiff and Appellant.

Coleman F. Fannin and Thomas J. Sheahan, under appointment by the Court of Appeal, Grydyk & Fannin and Calfee, Westover & Sheahan, for Defendants and Respondents.

ELKINGTON, J.—The People appeal from an order setting aside an information (Pen. Code, § 995) and from a certain order suppressing evidence.

Following a preliminary hearing commencing November 18,

1964, at which defendants were held to answer a charge of receiving stolen property, the District Attorney of Contra Costa County, on December 4, 1964, filed a two-count information charging that defendants Beasley and Reed did, on or about August 28, 1964, burglarize premises located at 588 Spring Street, Richmond, California; and (in the alternative) did buy and receive certain property, i.e., a Miller Falls saw and an Olivetti calculator, which had been stolen, and which were known by them to have been stolen.

The facts as developed at the preliminary examination are essentially without dispute.

Edward L. Ridgel, a concrete contractor, operated a place of business at 588 Spring Street, Richmond, California. When he went to this place of business on the morning of August 28, 1964, he found the door to his office broken down. This was an inner door since the office was enclosed in a large metal building. The metal siding had been ripped away from the building in two different places. The office door had been locked the day before and Mr. Ridgel had given no one permission to enter. A Miller Falls power saw and an Underwood-Olivetti calculator, both identifiable by serial number, were missing from the office; both had been in the office when it was locked up the previous day. Mr. Ridgel reported the burglary to the Richmond police at about 7:30 a.m. of the day of discovery. The police subsequently put information regarding the stolen property on the police teletype.

At about 4 p.m. on the afternoon of August 28, 1964, Inspectors Victor L. Short and Gerald J. Shaughnessy of the San Francisco Police Department entered the San Francisco Loan Office, a pawnshop, while on routine pawnshop patrol. As of the date of the preliminary hearing on this matter, November 18, 1964, Inspector Short had been a member of the police department for 23 years and assigned to the pawnshop detail for 12 years. Inspector Shaughnessy had been a member of the force for 15 years and assigned to the pawnshop detail for five years.

After entering the pawnshop the inspectors observed defendants Reed and Beasley talking to the clerk, Ruth Schneider, at the loan counter near the rear of the store. The officers were in plain clothes and they stood around for several minutes, observing activities in the shop. Defendants were talking to the clerk regarding a power saw which was on the counter. The officers then heard the clerk ask Reed for identification and heard him reply that he had none.

At this point the police officers stepped forward, identified themselves as such, and began to question defendants as to the nature of the transaction being carried on by them. Inspector Short testified that he had been assigned to the pawnshop detail for some 12 years. He testified that he suspected defendant Reed was using a fictitious name when Reed could not (or at least did not) produce identification. The inspectors noted that while only defendant Reed was actually negotiating with the pawnbroker both Reed and Beasley were standing together and it was obvious they were together.

After identifying themselves, Inspector Short engaged defendant Reed in conversation and Inspector Shaughnessy separately engaged defendant Beasley in conversation. Short asked Reed what the transaction was and Reed replied that he was pawning the saw on the counter. When asked if the saw was his, he replied that it was. Inspector Short looked at the pawn book immediately in front of Reed, pointed at it and asked if that was Reed's signature on the ticket. He replied that it was. The name signed was that of a William Carter, 928 Fillmore Street. Inspector Short then asked Reed if he had any identification and he said he had none.

Meanwhile Inspector Shaughnessy was talking to the defendant Beasley. Inspector Shaughnessy had asked Beasley to step to the side, some 20 feet from the others, which he voluntarily did. When asked what he was doing in the shop Beasley said that he was with Mr. Reed who was pawning his saw. When asked whose saw it was, he replied that it was Reed's uncle's or father's or someone like that. Beasley also stated he had no identification on him. About this time Inspector Shaughnessy observed a slip of paper in Beasley's shirt pocket which looked like an automobile registration slip. The inspector asked what the piece of paper was and Beasley voluntarily handed it to him when the officer asked if he could see it. The slip was indeed an automobile registration slip and had the name McFarland Beasley on it. When asked about the automobile registration slip, Beasley, who had previously, when asked, given a name other than Beasley, replied that he had found it, that he was not McFarland Beasley, that he did not own an automobile, and that he did not own the automobile listed on the slip.

The parties then changed partners, following police practice, in order to compare stories. Beasley told Inspector Short that his name was James Moore and that he lived at 1606 16th Street, Oakland, California. When Inspector Short asked if he

had any identification, he said that he did not. When asked what he knew about the saw, Beasley replied, "We picked it up this date."

In response to inquiry by Inspector Shaughnessy, defendant Reed said his name was William Carter and his address was 928 Fillmore Street. Asked where he got the saw, Reed said that he had bought it in Richmond that morning for $5. When Inspector Shaughnessy asked Reed what Beasley's name was, Reed refused to tell him. When asked if there was some reason why he wouldn't tell Beasley's name, Reed replied, "I won't tell you." The officer then asked, "Can't you tell me his name, is it Joe, Pete, Mike?" Reed replied, "His name is Pete." Inspector Shaughnessy said, "Is that his name?" Reed then replied, "Well, you said it and that is his name."

Following these conversations Inspectors Short and Shaughnessy placed defendants Reed and Beasley under arrest for suspicion of violating Penal Code section 496 (receiving stolen property). It was later during the booking process that the officers learned defendants' true names. The saw being pawned had the same serial number as that stolen from Mr. Ridgel.

The transcript of testimony taken at the preliminary examination also indicates that the police later made a search of Beasley's automobile in the course of which the missing calculator was found. Confessedly this search was illegal and the calculator was not introduced in evidence at the preliminary examination. ▆ Additionally the transcript indicates that the police questioned and obtained incriminating statements from defendants after their arrest. This interrogation was clearly in violation of the later announced rule of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 602, 10 A.L.R.3d 974], which under *Johnson* v. *New Jersey,* 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772], must apply to this as yet untried case. (See also *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

On December 21, 1964, defendants noticed a motion to suppress evidence, which motion was, on January 11, 1965, granted, among other things, as to the Miller Falls saw and the automobile registration slip which had been in Beasley's possession. This is one of the appealed from orders. ▆ Such an order suppressing evidence is not appealable. (*People* v. *Gershenshorn,* 225 Cal.App.2d 122, 124-125 [37 Cal.Rptr. 176]; *People* v. *Justice Court,* 185 Cal.App.2d 256, 258 [8

Cal.Rptr. 176]; Witkin, Cal. Criminal Procedure (1963) Appeal, § 667, p. 654.)

All parties agree that the order suppressing evidence is not appealable. Defendants contend, however, that in determining whether they "had been committed [by the magistrate] without reasonable or probable cause" on their later Penal Code section 995 motion to dismiss, the trial court, and now this court, must exclude from consideration the evidence which had been suppressed. They insist that the trial court's order suppressing evidence has the characteristics of a final order in the sense that once made, it is beyond the power of the trial court to reconsider or to modify or set aside. They support this proposition by no authority.

█ We do not agree with this contention. A motion to suppress evidence is a means provided by our practice for determining the question of admissibility of evidence in advance of the time it would ordinarily be offered. It is no more than an orderly means of preliminarily disposing of evidentiary issues which otherwise would be determined by motions, objections and rulings later during the trial. █ An order suppressing evidence, at least insofar as we are here concerned, is the equivalent of an order sustaining an objection to the same evidence, and is subject to the same procedural rules. These rules allow the trial court to reconsider, modify or set aside its order at any time prior to submission of the cause. (Code Civ. Proc., § 128, subd. 8.)

In its later consideration of the motion to dismiss under Penal Code section 995 the trial court was obliged to make its determination whether defendants had been committed by the magistrate without reasonable or probable cause. It was not bound to follow any erroneous determination it had made in the order suppressing evidence.

█ Reasonable or probable cause to hold a defendant to answer means "such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused." (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344]; accord: *Perry* v. *Superior Court,* 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529]; *Cotton* v. *Superior Court,* 56 Cal.2d 459, 462 [15 Cal.Rptr. 65, 364 P.2d 241]; *Robison* v. *Superior Court,* 49 Cal.2d 186, 188 [316 P.2d 1]; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250].)

█ In determining whether reasonable or probable cause for holding exists in this case the evidence relating to the

search of Beasley's car, and the beforementioned statements given by defendants after their arrest to the police, may not be considered for any purpose. Only competent evidence may be considered. An information will not be set aside merely because some incompetent evidence was received by the magistrate, if there is otherwise substantial competent evidence which supports the charge. However, when there is no competent evidence before the magistrate establishing reasonable or probable cause, an information will properly be dismissed under Penal Code section 995. (See *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Aday*, 226 Cal.App.2d 520, 527 [38 Cal.Rptr. 199]; *Callan* v. *Superior Court*, 204 Cal.App.2d 652, 662 [22 Cal.Rptr. 508]; *McFarland* v. *Superior Court*, 88 Cal.App.2d 153, 158 [198 P.2d 318]; *Stern* v. *Superior Court*, 78 Cal.App.2d 9, 17-18 [177 P.2d 308]; *People* v. *Schuber*, 71 Cal.App.2d 773, 775 [163 P.2d 498]; Witkin, Cal. Criminal Procedure (1963) pp. 212-213. Within this concept, however, where the evidence is conflicting, and different inferences may reasonably be drawn, the magistrate's "conclusion must prevail over that of the superior judge, who but reviewed the transcript of the preliminary examination." (*People* v. *Magidson*, 232 Cal. App.2d 1, 3 [42 Cal.Rptr. 408].)

 We think the court erred in setting aside the information. When Inspectors Short and Shaughnessy entered the pawnshop they observed defendants Reed and Beasley talking to the pawnbroker at the loan counter about the pawning of a power saw which was then clearly visible and lying on the counter. The police officers remained unobtrusive for several minutes and observed defendants. During this period of time they overheard the pawnbroker ask defendant Reed for identification and heard him reply that he had none. Pawning of property accompanied by a lack of identification as here demonstrated has special significance to police officers with long experience on the pawnshop detail. During the 12 years that Inspector Short was assigned to the detail, he testified he had arrested between 700 and 1,000 persons. In his experience he had found that when a person attempting to pawn an object could not produce identification, he was using a fictitious name. Inspector Short was unaware of a single instance when there was not something wrong with the ownership of property when the person attempting to pawn it used a fictitious name. Here there was evidence of an attempt to pawn the saw, evidence of a fictitious name, i.e., lack of identifica-

tion on part of the pawnors, and further, evidence indicating that both defendants were together in the endeavor. Collectively this appears to constitute reasonable cause for further investigation and questioning.

In evaluating the total situation that confronted Inspectors Short and Shaughnessy as they entered the pawnshop we may consider their training and experience as police officers (*People* v. *Wozniak,* 235 Cal.App.2d 243, 250 [45 Cal.Rptr. 222]) and their expertise in the area of detecting suspicious circumstances which, to an ordinary individual, might appear innocent. (*People* v. *Williams,* 196 Cal.App.2d 726, 728 [16 Cal. Rptr. 836]; *People* v. *Whyte,* 199 Cal.App.2d 641, 645 [18 Cal.Rptr. 889]; *People* v. *Ortiz,* 208 Cal.App.2d 572, 579 [25 Cal.Rptr. 327].)

We also note the sequence of events in the case before us. Even should the circumstances as they initially appeared to the officers not constitute probable cause to arrest, or for a holding, they nevertheless justified the questioning of defendants. That questioning, which was reasonably conducted, developed additional evidence, which was competent and properly admitted in support of the holding by the magistrate. In *People* v. *Mickelson,* 59 Cal.2d 448, 450-452 [30 Cal.Rptr. 18, 380 P.2d 658], the court said: ". . . we have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. . . . Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. [Citations.] . . . We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified." (See also *Ker* v. *California,* 374 U..S 23 [10 L.Ed.2d 726, 83 S.Ct. 1623]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Lopez,* 60 Cal.2d 223, 241 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *McVey,* 243 Cal.App.2d 215, 218-221 [52 Cal. Rptr. 269]; *People* v. *Rogers,* 241 Cal.App.2d 384, 387 [50

Cal.Rptr. 559]; *People* v. *Machel,* 234 Cal.App.2d 37, 43-48 [44 Cal.Rptr. 126].)

The rule of *Miranda* v. *Arizona, supra,* 384 U.S. 436, does not apply to the questioning of defendants in the pawnshop. The defendants were not then in custody, suspicion as to an unsolved crime had not begun to focus on them and the police process of interrogation did not lend itself to eliciting incriminating statements any more than it did exonerating information. (See also *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].)

Both the power saw and the automobile registration certificate are admissible against defendants. As to the saw we have no problem of unreasonable search since it was, as the officers entered the pawnshop, in open view. (*People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Norton,* 209 Cal.App.2d 173, 176-177 [25 Cal.Rptr. 676]; and see *People* v. *Davis,* 235 Cal.App.2d 214, 222 [45 Cal.Rptr. 297].) Whether the registration certificate which was in open view in defendant Beasley's shirt pocket, be considered not the product of a search at all (*People* v. *Norton, supra*) or it be considered as voluntarily produced, since Beasley voluntarily handed it to the officer when asked, it is admissible into evidence (*People* v. *Davis, supra*).

Since the saw and the registration certificate are competent evidence against defendants we consider both counts of the information to be properly supported. In a prosecution for burglary, or for receiving stolen property, proof of possession of stolen property is a strong incriminating circumstance although it alone will not support a conviction. (See *People* v. *Boxer,* 137 Cal. 562, 564 [70 P. 671].) But it takes little more by way of corroboration. (See *People* v. *McFarland,* 58 Cal.2d 748, 755 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Russell,* 120 Cal.App. 622, 625 [8 P.2d 209].)

The appeal from the order suppressing evidence is dismissed. The order setting aside the information is reversed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied May 2, 1967.