[Nos. 39534, 39692.    Department One.    April 11, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY
ELLSWORTH DEARINGER *et al., Appellants.**

*Richard E. Kane* (of *Kadish & Kane*), for appellants
(appointed counsel for appeal).

*Ronald L. Hendry, Joseph D. Mladinov,* and *Eugene G.
Olson,* for respondent.

HALE, J.—Sheriff's deputies had a warrant to search the
defendants' residence. While executing it, they found ille-
gal narcotic drugs in the yard next door. In a prosecution
for illegal possession of narcotic drugs, the trial judge de-
clined to suppress the drugs as evidence, and the defend-
ants now appeal the convictions.

The Dearingers lived in a house at 10417 East B Street in
Tacoma; next door lived the Emlys. A fence between the
houses separated the two yards. October 10, 1966, the Dis-
trict Justice Court, District 1, Pierce County, duly issued a
search warrant directing the Sheriff of Pierce County to
search the house of defendant Anthony E. Dearinger at
10417 East B Street and seize any marijuana or other nar-
cotic drugs that might be found therein.

That night, at about 10 o'clock, five deputies from the
sheriff's office took the search warrant to the Dearinger

*Reported in 439 P.2d 971.

residence. Three of them went to the front door and two others to the back door. The officers at the front knocked on the door and, in response to a query from inside, announced that they had a warrant to search the house. A woman's voice from inside said that she would call an attorney. A few moments later one of the officers kicked on the front door and after a short lapse of time defendant Marjorie Coreen Dearinger opened it, and the officers at the front door entered the house and started to search it.

Meanwhile, at the back door, the two officers waiting to be admitted heard the sound of someone in the house running from what seemed to be somewhere in the center toward its northeast corner and saw the figure of a person move past the window draperies. They heard a noise which they could not then identify, closely followed by the sound of something jingling as it hit the ground outside, "A jingling sound hit the ground—like glass," as one officer described it. The other officer described the noise as a thudding sound, as of two metal objects hitting each other.

Entering the house, the two officers at the back door engaged in the search. One of them, after looking into a bedroom seemingly located in the area of the house near where they had heard the sound of an object hitting the ground, took a flashlight and returned to the side of the house where he had first heard the sound.

The officer played his light about the Dearinger yard at first and then walked through an open gate into the Emly yard. Near the fence separating the two yards, and about 15 feet from the window past which they had seen the shadow of a person move and from which had come the sound, he found a man's black sock tied into a knot. The officer untied the knot and saw that it "contained a plastic bag with several bottles." A closer inspection showed that the plastic bag held five bottles containing white tablets. Also in the sock were two small, apparently handmade, cigarettes containing an olive-green mixture. Although it had been raining earlier that evening making the grass in both yards wet, the officer said that the sock was dry.

Mrs. Eilene Emly, the next-door neighbor in whose yard the officer found the sock, did not know that the officer had entered her yard. She testified that both defendants lived next door to her; she was acquainted with them; neither she nor her husband used narcotics; she was not aware that the officer had entered her yard that night; and she was unaware that night that a black sock had been found there. Her permission had not been obtained to search, and she had not been notified of the officer's intention to look around her yard.

Defendant Anthony Dearinger was not at home that night; he was at the time in jail on a traffic violation. The state connected him to the sock and contents, however, by proving that his fingerprints were found on two of the five bottles in the sock. Chemical analysis of the several contents showed that the sock and bottles contained marijuana along with one narcotic drug called Methadone, another narcotic drug known as Ethylmorphone, and a third narcotic drug called Anileridine.

Following trial by jury, defendant Marjorie Dearinger was adjudged guilty of four counts of unlawful possession of narcotic drugs and sentenced to a suspended sentence of 20 years' confinement on each count; her husband, convicted on one count, was sentenced to 20 years' confinement. Both parties appeal, assigning as error the court's failure to suppress as evidence the black sock and its contents. They urge this evidence to be the product of an unreasonable search and seizure under the fourth amendment to the United States Constitution, article 1, section 7 of the Washington State Constitution, and RCW 10.79.040, and that it was, therefore, inadmissible.

As we see it, the precise question presented by the facts of this case gives rise to a number of collateral questions the answers to which are not essential to a decision. The particular question here is whether officers may retrieve articles which they have reasonable grounds to believe have, immediately prior to or during a lawful search, been thrown onto, or concealed within, nearby premises, and

whether such articles shall be regarded as having been seized pursuant to the lawful search if the adjoining or nearby property in which the articles are found is not designated in the warrant. Would evidence found in such a search be admissible in evidence as though taken on the premises described in the warrant?

It appears that this question has been earlier answered to a large extent by this court in *State v. Loran*, 62 Wn.2d 4, 380 P.2d 733 (1963), for by analogy the two cases depend on nearly identical principles. In *Loran*, a police officer detailed to investigate a reported morals offense in a neighborhood saw two men approaching him on the sidewalk, one of whom carried a brown paper sack. As the men walked toward the officer, they stopped, and one of them bent over in front of the other as though to tie his shoe. The other, apparently thinking himself shielded from sight, tossed the paper sack onto the lawn of the adjoining yard, whereupon both men continued walking toward the approaching officer. Explaining that he was investigating a morals offense in that neighborhood, the officer requested the two men to accompany him to the house of the complainant who had made the morals complaint, and the two men complied.

> When they reached the place where the paper sack had been tossed, the officer picked it up off the grass and asked the appellant if he had forgotten it. The appellant denied that the sack belonged to him. The officer then opened the sack and saw that it contained narcotic drugs. Thereupon, he placed the appellant under arrest. *State v. Loran*, 62 Wn.2d 4, 5, 380 P.2d 733 (1963).

We rejected appellant's argument in *Loran* that retrieving the sack from the lawn constituted an unreasonable search and seizure, the avails of which would be inadmissible. We held that, since the seized article was in plain view on property belonging to a stranger, a place neither occupied nor controlled by the defendant, appellant had no standing to assert a constitutional protection over the particular premises.

In the instant case, we need not decide the question of defendants' standing to complain of the officer's search of the yard next door, for the events of the search and seizure appear to establish that the articles were lawfully taken under a legal search warrant which, under the circumstances, covered the place where the articles were found. These circumstances permitted a reasonable belief that the occupant of the premises undergoing the search had, while it was in progress, tossed or thrown something from the house onto the adjoining yard. This brought the article and the place where found within the ambit of the premises designated in the warrant. It was the immediacy of the events and their close relationship in space and time to the actual search which characterized them as being a part of the search.

■ Where, during the lawful search of a building, the physical senses of the officers lawfully on the premises apprise them that occupants of the searched premises have, during or immediately preceding the search, thrown or removed something from the particular premises, if an article is found and taken during the search in such a place and under such circumstances as to leave a reasonable inference that it had been thrown or placed there during or immediately prior to the search, it constitutes a seizure on or within the premises designated in the warrant.

This rule we find to be in consonance with and supported by the rationale sustaining the well-established rule

> that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Ker v. California*, 374 U.S. 23, 42-43 (1963); *United States v. Lee*, 274 U.S. 559 (1927); *Hester v. United States*, 265 U.S. 57 (1924). *Harris v. United States*, 390 U.S. 234, 19 L. Ed. 2d 1067, 88 Sup. Ct. 992 (1968).

Affirmed.

FINLEY, C. J., ROSELLINI and McGOVERN, JJ., and LANGEN-BACH, J. Pro Tem., concur.

June 12, 1968. Petition for rehearing denied.