Anthony Ellsworth **DEARINGER,**
Appellant,

v.

**B. J. RHAY,** Superintendent, Washington
State Penitentiary, Walla Walla,
Washington, Appellee.

No. 23776.

United States Court of Appeals,
Ninth Circuit.

Jan. 28, 1970.

Rehearing Denied Jan. 28, 1970.

Anthony Ellsworth Dearinger, in pro.
per.

John J. O'Connell, Atty. Gen., State of
Washington, Olympia, Washington, for
appellee.

Before BARNES, HAMLEY and
KILKENNY, Circuit Judges.

HAMLEY, Circuit Judge.

The opinion filed herein on December
9, 1969, is withdrawn and, in lieu thereof, the opinion attached hereto is filed.

The petition for rehearing is denied.

This is an appeal from a district court
order, entered without a hearing, denying an application for a writ of habeas
corpus. The applicant, Anthony Ellsworth Dearinger, is serving a prison
sentence at Washington State Penitentiary, following his conviction on May 3,
1967, on a state charge of illegal possession of narcotic drugs. The Supreme
Court of Washington affirmed his conviction in State v. Dearinger, 73 Wash.
2d 563, 439 P.2d 971 (1968).

Dearinger's conviction was based upon
a jury finding that he was the possessor
of narcotics contained in a sock thrown
from Dearinger's home into the yard of
a neighbor at the time police were seek-

ing entrance to Dearinger's home pursuant to a search warrant. In his habeas application Dearinger alleged that the search and seizure were unreasonable under the Fourth Amendment because the search warrant was based upon information obtained from Dearinger's companion, Ross Miller, shortly after the latter's unlawful arrest.

Dearinger presented the facts pertaining to Miller's allegedly unlawful arrest in some detail in his application for a writ of habeas corpus. According to the application, Dearinger left his Tacoma, Washington residence about 8:00 p. m. on October 10, 1966, in a car owned and driven by Tom Bobbit. Ross Miller was also a passenger in the car. Moments after these three drove away from Dearinger's home, Deputy Sheriff Larry Morris began "tailing" the Bobbit car and continued to do so for approximately eight blocks. The deputy sheriff then ordered Bobbit to stop his automobile for "crossing the white line" and issued a traffic ticket to Bobbit.

According to the application, Dearinger, Bobbit and Miller were thereupon taken into police custody. Dearinger and Bobbit were each handcuffed and placed in separate police cars and held at the scene of the arrest for approximately one and a half to two hours. During this period, deputies took Miller to the sheriff's office.

Dearinger's application did not disclose what transpired after deputy Morris stopped the Bobbit car for a purported traffic violation, which led the deputy sheriff to arrest all three occupants, send one passenger, Miller, to the police station, and leave Bobbit and Dearinger in handcuffs at the scene. In his brief on appeal, however, Dearinger states that after the Bobbit car had been stopped, several other deputy sheriffs converged upon the scene and, along with Morris, searched the automobile and its occupants. Dearinger further states in his brief that no contraband was found in the automobile or upon the persons of Bobbit and Miller. Nevertheless, on this appeal the only ground on which Dearinger attacks the legality of Miller's arrest is that the deputy sheriff had no right to stop the Bobbit car because no traffic law violation had occurred.

While held in custody at the sheriff's office, Miller told deputy sheriff Morris and deputy prosecutor Gary Crook that he had seen narcotic drugs in the bedroom of Dearinger's home at 10417 East B Street, Tacoma, shortly prior to the arrest. The search warrant in question was obtained upon the basis of this statement by Miller. Dearinger in effect alleged, in his application, that, but for the arrest and statement of Miller, law enforcement officers would not have obtained information concerning narcotics in his home.

The district court rejected this attack upon the validity of the search warrant, holding that Dearinger did not have standing to question the legality of Miller's arrest. Contesting that ruling in this court, Dearinger argues that under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), made applicable to the states in Traub v. Connecticut, 374 U.S. 493, 83 S.Ct. 1899, 10 L.Ed.2d 1048 (1963), he may challenge Miller's arrest in order to establish that the search warrant was not lawfully issued.

In arguing that, under *Wong Sun*, it must be held that the search warrant was tainted by Miller's alleged unlawful arrest, Dearinger quotes language appearing at pages 487–488 of that opinion in which the court held that narcotics taken from Johnny Yee at the latter's home were not admissible against defendant James Wah Toy. But Toy was held to have standing to object to the admission of the narcotics as against him because the information which led law enforcement officers to the narcotics was the "poisonous fruit" of the officers' illegal arrest of Toy following their illegal entry into his home. Toy was not trying to take advantage of illegal police conduct directed against another, but only of illegal police activity directed against himself.

The Supreme Court rejected the contention of Toy's codefendant, Wong Sun, that the narcotics taken from Yee should not be admitted against Wong Sun because police had been led to Yee's house as a result of the unlawful arrest of Toy. The Court held that the unlawful entry into Toy's home, his unlawful arrest there, and the resultant seizure of narcotics from Yee did not violate any right of Wong Sun, but only the rights of Toy. Said the Court:

> "Our holding, *supra*, that this ounce of heroin was inadmissible against Toy does not compel a like result with respect to Wong Sun. The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Yee. The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial. *Cf.* Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312." 371 U.S. 491–492, 83 S. Ct. 419 (footnote omitted).

■ On analogous reasoning, we hold that if Miller's arrest was illegal, such illegality did not violate any right of Dearinger. He therefore does not have standing to urge the illegality of Miller's arrest, and the "poisonous fruit" thereof, as a ground for challenging the warrant to search his home.[1]

Dearinger also argues that the district court erred in failing to issue an order to show cause, in failing to hold an evidentiary hearing, in denying his motions for production of documentary evidence and for appointment of counsel, and in denying his application for release pending appeal.

■ Since we hold that the only ground for relief stated in the application for a writ is insufficient, as a matter of law, to entitle him to habeas relief, Dearinger was not prejudiced by the denial of these procedural motions. It follows that there was no reversible error in these respects.

■ It is appropriate to say, however, that in most habeas proceedings, including this one, the functioning of this court is best served by the issuance of a show cause order. Only in this way can the proceeding assume an adversary character and can all issues be fully exposed and explored at the district court level. Even where, as here, the appeal turns on a question of law rather than fact, the task of this court is facilitated if the warden is provided an opportunity to respond to the application.

■ Issuance of a show cause order is not, of course, appropriate where the district court dismisses an in forma pauperis habeas proceeding as frivolous, pursuant to 28 U.S.C. § 1915(d).

Affirmed.

---

1. Although Dearinger alleges that he, too, was illegally arrested, he does not assert that any information obtained as a result of *his* arrest, as distinguished from information obtained as a result of Miller's arrest, provided a basis for the search warrant.