[No. 1832-2.    Division Two.    June 28, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. JOAN SMITH, ET AL, *Appellants*.

*James M. Caraher,* for appellants.

*Donald F. Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

REED, J.—Joan Smith and Jean Norris appeal their convictions of unlawful possession of heroin, a controlled substance. The assignments of error challenge (1) the form and time of execution of a warrant to search the Smith house and the authority to search a septic tank behind the

residence; (2) the failure of the trial court to order disclosure of a police informant's identity; (3) the failure of the court to order the prosecution to disclose its intended use of certain exhibits; (4) the admission of those exhibits; (5) the propriety of a prosecution question on recross-examination which was allegedly beyond the scope of redirect; (6) the asserted failure of the State to prove that "heroin hydrochloride" is a controlled substance; and (7) the court's denial of defendant Norris' motion for dismissal due to insufficient evidence at the close of the State's case.

We believe the evidence against Jean Norris was sufficient to allow the case to go to the jury, and we affirm both convictions, finding no reversible error.

At 11:30 p.m. on August 7, 1974, Tacoma Police Officer William Garrison obtained a warrant from Municipal Judge DeWitt Rowland to search Joan Smith's dwelling, her vehicles there located, and all persons present at the time of the search. The warrant was executed at about 1:15 a.m. on August 8 by a party of Tacoma police officers and Pierce County deputy sheriffs. The officers properly identified themselves and were admitted to the home by one Gloria Brewster, who began screaming, "The cops, the cops." Immediately, Deputy Thomas Simmons, the first into the house, saw Jean Norris run down a hallway into a bedroom and close the door behind her. Deputies Simmons and Loren Page pursued her. The bedroom door would not open, although it was unlocked and the doorknob turned. Deputy Simmons tried the knob and almost simultaneously hit the door twice with his shoulder. The door flew open, allowing Simmons and Page to enter. Jean Norris was standing across the bedroom; it appeared to Deputy Page she was backing up. Simmons assumed that Norris had been bracing the door shut. Upon entering the room, Deputy Simmons heard a toilet flush in its enclosed bathroom and directed Page to go in. Page entered the bathroom and observed defendant Smith standing naked near the toilet. Smith testified she had just taken a shower, but the officers

found her and the shower stall completely dry and no towel in sight.

A subsequent search of the premises yielded a playing card with a bent corner—such as often used for "snorting" heroin or cocaine—and a quantity of lactose (milk sugar) and brown sugar, substances commonly used to "cut" or dilute heroin. Some of the lactose and the card were in Smith's bedroom where the women were found. The officers then opened a septic tank[1] about 6 feet from the bedroom and pulled out a condom containing another condom and 8 small balloons of heroin, 15.6 grams in all. The packaged heroin was found just below the pipe from the house into the tank and floating on top of the sludge within. The heroin's estimated potential street value was $2,500. Notably, the officers found nothing to establish Norris' residency at the house. She said she had recently arrived from the South and was "just visiting."

■ We first take up the defendants' challenge to the warrant on the ground it failed to "designate a magistrate to whom it shall be returned", as JCrR 2.10(c) requires. Although defendants are correct as to this omission, defects relating to the return of a search warrant are ministerial and do not compel invalidation of the warrant or suppression of its fruits, absent a showing of prejudice by the defendant. *See United States v. Wilson*, 451 F.2d 209 (5th Cir. 1971); *State v. Ronniger*, 7 Ore. App. 447, 492 P.2d 298 (1971). Here the warrant was timely returned to the issuing court on August 9, 1974. The defendants demonstrate no prejudice due to the failure of compliance with the rule. Under these circumstances, there is no reversible error.

■ Defendants next argue that the execution of the warrant at night was per se unreasonable without a specific showing of the need for nocturnal execution. This argument is based on Federal Rules of Criminal Procedure 41(c), which provides that a federal warrant "shall be served in the daytime," unless otherwise authorized upon reasonable cause. However, JCrR 2.10(c), at issue here,

---

[1]The tank was entered by simply moving a board and cement lid.

and CrR 2.3(c) governing superior court procedure, both omit the federal requirement and specify that the "warrant may be served at any time" within 10 days of issuance. Moreover, it is obvious that Judge Rowland, in signing the warrant shortly before midnight, was aware it might well be executed before daylight. This assignment of error is without merit.

■ The third reason advanced for suppression of the condom of heroin is that it was seized from the septic tank outside the house, allegedly beyond the physical scope of the warrant. We likewise find no merit in this argument. This situation is controlled by the decision in *State v. Dearinger*, 73 Wn.2d 563, 439 P.2d 971 (1968), in which officers went into a yard adjoining the house described in the warrant to retrieve an item thrown from the house. The court stated the applicable rule at page 567:

> Where, during the lawful search of a building, the physical senses of the officers lawfully on the premises apprise them that occupants of the searched premises have, during or immediately preceding the search, thrown or removed something from the particular premises, if an article is found and taken during the search in such a place and under such circumstances as to leave a reasonable inference that it had been thrown or placed there during or immediately prior to the search, it constitutes a seizure on or within the premises designated in the warrant.

Here, when a toilet flushed as the deputies entered the bedroom, the search of the septic tank connected to the house was sanctioned by *Dearinger*.

The defendants next contend the trial court erred in refusing to allow disclosure of and access to the informant who supplied the information used to obtain the warrant. They argue that he could have been interviewed to determine his knowledge of who among the several occupants of the house actually possessed any controlled substances and also whether he might have had a motive for "planting" the heroin in the septic tank prior to search.

■ The identity of a police informant, not to be called

as a witness at trial, need not be disclosed to the defendant absent a showing of an infringement of his constitutional rights. CrR 4.7(f)(2); *State v. Cowles*, 14 Wn. App. 14. 538 P.2d 840 (1975). The defendants' assertion that the informant could have specified which of the occupants had possession of drugs prior to the search is first, only a supposition and second, irrelevant to the circumstances connecting the defendant Smith to the heroin in her septic tank. Norris running down the hall, the flushing toilet, Smith's presence in the bathroom with the evidence negating her shower story, the playing card and lactose in her bedroom, and, foremost, the heroin found floating on top of sludge right under the septic tank pipe—this chain of facts, coupled with the testimony that drugs commonly go down the toilet during police raids, is strong, independent evidence of Smith's guilt regardless of whether the informant saw someone else in possession of heroin earlier. Indeed, Smith does not challenge the sufficiency of this evidence to convict her. Nor does the unsupported speculation that the informant may have had a motive to "plant" the heroin rise to the stature of an affirmative showing of necessity of the informant's identity to the defense. *State v. Vanzant*, 14 Wn. App. 679, 544 P.2d 786 (1975). Disclosure of his identity was properly withheld.

The exhibits in question are numbers 2 through 5: a bent 4 of spades with a minute, untestable quantity of powder on it; a glass bowl of lactose; two bags of lactose; and a jar of brown sugar. CrR 4.7(a)(1)(v) requires the prosecution to reveal the existence and nature of tangible evidence intended for use at trial. However, defendants have cited no authority for the proposition that the State must divulge its tactical use of exhibits. They have not specified undue prejudice arising from their inability to learn the State's intended use. We find this assignment of error to be without substance. CrR 4.7 does not require the disclosure of prosecution or defense strategy.

Defendants' related argument is that exhibits 2 through 5 were erroneously admitted because they were strongly

prejudicial and offered without foundation. The exhibits, all elements of heroin usage, were introduced to show knowledge of the defendants that heroin was on the premises and thereby to support the charge of constructive possession.

■ Although the State need not prove knowledge to make a prima facie case of possession, it is not precluded from introducing competent, circumstantial evidence tending to link the defendants with the drugs. *People v. Sauceda*, 199 Cal. App. 2d 47, 18 Cal. Rptr. 452 (1962) (gelatin capsules used to package heroin); *Martinez v. State*, 473 S.W.2d 520 (Tex. Cr. App. 1971) (syringes); *see State v. Harris*, 14 Wn. App. 414, 542 P.2d 122 (1975) (gram scale). A sufficient foundation for admission of these exhibits was laid by testimony concerning their possible illicit usage, and the discovery of the heroin itself supplied the relevancy to outweigh any prejudicial impact. The court did not err in admitting them.

The defense called one Timothy Hicks, a resident of the Smith house at the time of the raid, who testified that the lactose in exhibit 4 was purchased as a laxative for his 3-year-old son. He was asked on redirect examination whether he was sure lactose was in the house when the search occurred and if he had seen it in the house. On recross, he was asked, "Did you see any drugs in the house?" An objection that it was beyond the scope of redirect was overruled. Hicks then invoked the Fifth Amendment. Subsequently the jury was cautioned concerning his response. The defendants now urge that the question was beyond the scope and that it lacked a foundation as to time and place.

■ The objection as to lack of foundation was not raised until a motion for mistrial following the removal of the jury. This ground for objection not having been specified when the question was asked, we need not consider it on review. *Palmer v. Massey-Ferguson, Inc.*, 3 Wn. App. 508, 476 P.2d 713 (1970). It appears, additionally, that the question was within the scope of the direct examination.

We agree with the trial court that when the witness was asked about his knowledge of one substance—lactose—in the house, it opened the door for the question of his observation of other substances.

The defendants' final joint contention is that the State failed to prove an essential element of the crime, namely, that the "heroin hydrochloride," or "heroin," identified from the condom and balloons is a controlled substance listed in RCW 69.50. In view of the fact that RCW 69.50.204(c) (Schedule I) specifically includes "heroin" as a controlled substance, this argument is rather unpersuasive. Moreover, it is now raised for the first time on appeal and need not be considered where, as here, there is no violation of constitutional rights or manifest injustice involved. *Puget Sound Marina, Inc. v. Jorgensen,* 3 Wn. App. 476, 475 P.2d 919 (1970).

We now turn to the sufficiency of the evidence to convict Jean Norris, placed in issue by her motion to dismiss following the prosecution's case in chief. When reviewing the denial of such a motion, we must accept the truth of the State's evidence and draw all reasonable inferences in favor of the State. *State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971). We must not weigh the evidence, but are limited "to a determination of whether the state has produced *substantial evidence* tending to establish circumstances from which the jury could reasonably infer the fact to be proved." *State v. Dugger,* 75 Wn.2d 689, 690, 453 P.2d 655 (1969).

Applying these criteria to the instant case, we summarize the evidence as follows:

1. Upon entering the house, Deputy Simmons saw Norris "breaking" down the hallway "rapidly, I would almost say it was a run."

2. She closed the bedroom door behind her.

3. Deputy Simmons tried the doorknob, thought the door was unlocked, but found that it would not open. He forced the door and saw Norris "back up against" the bedroom wall across the room. He assumed she had been holding the

door shut. Deputy Page saw her "backing up or at least in a retreat motion" when the door opened.

4. Deputy Simmons heard the toilet flush in the bathroom, Joan Smith was found next to the toilet, and a quantity of heroin was located in the septic tank under the inlet pipe.

5. Concomitants of heroin usage were found in Smith's bedroom.

We have commented upon the sufficiency of this evidence to convict Joan Smith. The jury could reasonably have concluded that Smith possessed the heroin in her room and attempted to conceal it by flushing it down the toilet and into the tank. This inference is strengthened by the location of the drugs in the tank and the sensible assumption that such a valuable quantity would not be concealed in such a place absent the compelling circumstance of a police raid.

The State obtained an instruction and argued on the theory that Jean Norris, by obstructing entry to the bedroom, was an aider or abettor of Joan Smith's possession and, therefore, could be convicted as a principal as defined by RCW 9.01.030:

> Principal defined. Every person concerned in the commission of a felony, . . . whether he directly commits the act constituting the offense, or aids or abets in its commission, . . . is a principal, and shall be proceeded against and punished as such.

To sustain a conviction, this statute requires that the person charged as an aider or abettor must be ready to assist or must assist the perpetrator of the crime by his presence. *State v. Palmer*, 1 Wn. App. 152, 459 P.2d 812 (1969). Aiding or abetting requires more than mere knowledge or physical presence at the scene of a crime. *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973).

Here, the evidence before the court on the motion to dismiss was sufficient to support the jury's reasonable inference that Jean Norris first ran down the hall to alert Joan Smith and then blocked the door in an attempt to aid Smith to maintain her possession of the heroin by discharg-

ing it into the septic tank for future recovery. Such an interpretation of the evidence would constitute Norris an aider or abettor of Smith's criminal conduct. *People v. Ortiz,* 208 Cal. App. 2d 572, 25 Cal. Rptr. 327 (1962).

It is true that there was an innocent explanation for Norris' actions, *i.e.,* that she was merely trying to protect Smith's modesty by holding the bedroom door. Norris was not precluded from relating this explanation,[2] arguing it to the jury—as she did—or from renewing her motion in arrest of judgment after trial. However, our role on review is not to weigh the evidence or its conflicting interpretations. It is enough, for purposes of a motion to dismiss, that this jury could have reasonably concluded that Norris' actions were intended to assist Smith's criminal conduct.

The convictions are affirmed.

PETRIE, C.J., and PEARSON, J., concur.

---

[2] Jean Norris elected not to testify.