991 F.2d 804
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Blanca Lucero Largo LOPEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fabio Andres MORANTE-ANDRADE, aka: Pedro Cuartas,
Defendant-Appellant.
 Nos. 92-50227, 92-50229.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 8, 1993.*
Decided April 15, 1993.
 
 Before WALLACE, Chief Judge, and O'SCANNLAIN and FERNANDEZ, Circuit Judges.
 
 MEMORANDUM
 
 1
 Lopez and Morante-Andrade (Morante) appeal from their convictions, after a jury trial, for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). They also appeal the sentences they received under the United States Sentencing Guidelines (Guidelines). Lopez alone appeals his conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 2
 * Lopez and Morante first challenge the denial of their motion to compel disclosure of the identity of any confidential informants relied upon by the government in this case. The district court denied their motion after receiving an in camera declaration from case agent Larson and holding an in camera hearing during which Larson, but not the informant, was questioned. We review the district court's decision not to disclose the identity of an informant for abuse of discretion. United States v. Gonzalo Beltran, 915 F.2d 487, 488 (9th Cir.1990) (Beltran ).
 
 
 3
 The government has a limited privilege to withhold the identity of an informant, but this privilege must give way when the disclosure of the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." United States v. Williams, 898 F.2d 1400, 1402 (9th Cir.1990), quoting Roviaro v. United States, 353 U.S. 53, 60-61 (1957) (Roviaro ). There is no fixed rule with regard to disclosure; rather, a district court must balance
 
 
 4
 the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
 
 
 5
 Roviaro, 353 U.S. at 62.
 
 
 6
 The burden is on Lopez and Morante to demonstrate the need for disclosure, and a mere suspicion that disclosure would prove helpful is insufficient. United States v. Johnson, 886 F.2d 1120, 1122 (9th Cir.1989) (Johnson ), cert. denied, 494 U.S. 1089 (1990). In determining whether the district court struck the correct balance, "we examine three factors: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure." Beltran, 915 F.2d at 489.
 
 
 7
 Lopez and Morante do not allege any facts which suggest that disclosure of the informant's identity would have helped their defense in any way. See Johnson, 886 F.2d at 1122 (affirming denial of disclosure motion where defendant "did not allege facts which would indicate that disclosure was 'essential to a fair determination of [his] cause' "). We hold that this alone is sufficient to sustain the denial of the disclosure motion.
 
 
 8
 The only argument raised by Lopez and Morante is that the district court erred in holding an in camera hearing without the informant present. If we reached the issue, we would hold that the district court did not abuse its discretion in not requiring the presence of the confidential informant at the in camera hearing. First, a district court need not even conduct an in camera hearing when a motion to compel disclosure is made. United States v. Fixen, 780 F.2d 1434, 1440 (9th Cir.1986). The decision whether to hold a hearing is left to the district court's discretion. Id. Second, the procedure to be followed in conducting an in camera hearing is also left to the district court's discretion. See United States v. Ordonez, 737 F.2d 793, 810 (9th Cir.1984) (emphasizing that "[w]e do not intend to prescribe the in camera procedure to be followed by the district court"). There was no abuse of discretion.
 
 II
 
 9
 Lopez and Morante also challenge the denial of their several motions to suppress. They sought to suppress evidence seized from (1) the Chevy Blazer; (2) the Nissan Sentra; and (3) the residence at 705 West Hellman Avenue, on the ground that each of the searches and seizures was unlawful. The district court held that the search of the Chevy Blazer was lawful because it was incident to a custodial arrest, which in turn was supported by probable cause. The district court also held that Lopez and Morante did not have standing to contest the search of the Nissan, and, alternatively, that the search of the Nissan was lawful. The district court concluded that the warrant for the search of the residence on West Hellman Avenue was valid because the warrant was based upon evidence seized from the Nissan.
 
 
 10
 The lawfulness of a search and seizure presents a mixed question of law and fact which we review de novo. United States v. Huffhines, 967 F.2d 314, 316 (9th Cir.1992). Whether a defendant has standing to challenge a search also presents a mixed question of law and fact which we review de novo, although the district court's factual findings on the issue of standing are accepted unless clearly erroneous. United States v. Padilla, 960 F.2d 854, 858 (9th Cir.) (Padilla ), cert. granted, 113 S.Ct. 404 (1992).
 
 A.
 
 11
 Lopez and Morante argue that the search of the Chevy Blazer was not supported by probable cause. State police searched the Blazer after placing Lopez and Morante, who were inside the Blazer at the time, under arrest. Police officers may, without a warrant, arrest a person if they have probable cause to believe the person has committed a crime. United States v. Watson, 423 U.S. 411, 417, 423-24 (1976). Where an officer makes a lawful arrest of the driver or occupant of an automobile, the officer may, as a contemporaneous incident of the arrest, search the passenger compartment of the automobile and any containers found within that compartment. New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Lorenzo, 867 F.2d 561, 562 (9th Cir.1989).
 
 
 12
 The question, therefore, is not whether the officers had probable cause to search the Blazer, but whether they had probable cause to arrest Lopez and Morante. The existence of probable cause presents a mixed question of law and fact, in which we review the district court's legal conclusions de novo and its underlying factual findings for clear error. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 111 S.Ct. 80 (1990). Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." Id. In determining the existence of probable cause, we look to the totality of circumstances known to the officer prior to the arrest and search. United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir.1990) (Del Vizo ).
 
 
 13
 Based upon all of the circumstances, as recounted in the district court's July 17, 1991, order denying Lopez and Morante's motions to suppress evidence, we hold that the officers had probable cause to arrest Lopez and Morante. Taken together, their erratic driving, their counter-surveillance activities, their activities in picking up and switching the Nissan Sentra, and the fact that the Sentra appeared heavily loaded after Morante spent approximately fifteen minutes with the Sentra in their garage, indicated a pattern of activity reasonably showing that a large-scale narcotics transaction occurred. See id. at 826-27. As in Del Vizo, we are "impressed by the wealth of information gathered by the officers and the extent to which that information revealed a pattern of activity indicating participation in a narcotics transaction." Id. at 827 (internal quotation omitted).
 
 
 14
 Lopez and Morante argue that United States v. Freitas, 716 F.2d 1216, 1223 (9th Cir.1983), held that probable cause is not established solely by evasive or counter-surveillance driving. Even if we accept Lopez and Morante's characterization of Freitas, this case is different because much more than suspicious driving supported the police officers' determination of probable cause. Thus, the district court did not err in denying Lopez and Morante's motion to suppress evidence seized from the Blazer.
 
 B.
 
 15
 Lopez and Morante also challenge the search of the Nissan Sentra, which was being driven by their codefendant Curry when police stopped the car and conducted the search. The district court held that Lopez and Morante did not have standing to challenge this search. Lopez and Morante argue that they have standing based on a formalized arrangement with Curry which indicated their joint control and supervision of the Nissan. If so, Curry's consent to search would still frustrate the suppression effort. But we rest our holding on the standing issue.
 
 
 16
 To challenge a search, "defendants must establish that they had 'a legitimate expectation of privacy' in the place searched or the property seized." Padilla, 960 F.2d at 858, quoting Rakas v. Illinois, 439 U.S. 128, 143-44 (1978). Participation in a formal arrangement for joint control of the place searched is sufficient to establish standing. Id. at 859. However, it is not enough simply to allege such an arrangement. "We engage in a fact-specific analysis that includes consideration of the degree of cooperation and the respective possessory interests asserted." United States v. Taketa, 923 F.2d 665, 671 (9th Cir.1991).
 
 
 17
 Here the district court concluded that Lopez and Morante failed to present any evidence that they had any formalized joint control and supervision agreement with Curry. The court also determined that Lopez and Morante failed to present any evidence that they owned either the cocaine or the Nissan at the time of the search. Finally, the court found that Lopez and Morante had abandoned any possessory interest they might have had in the cocaine or the Nissan when Curry drove the car away and neither Lopez nor Morante followed.
 
 
 18
 In a case factually similar to the present one, we held that the abandonment of the seized item "may extinguish the defendant's reasonable privacy expectations." United States v. Mendia, 731 F.2d 1412, 1414 (9th Cir.1984), cert. denied, 469 U.S. 1035 (1984). The district court's determination of abandonment is "a factual issue and will not be reversed unless it is clearly erroneous." Id. Here, Curry entered the Nissan and drove away alone. Lopez and Morante drove away in the Chevy Blazer in a different direction; they made no effort to follow Curry. The district court's finding that Lopez and Morante abandoned their reasonable expectation of privacy in the Nissan by relinquishing control of the car and the cocaine within it is not clearly erroneous. See id.
 
 
 19
 Lopez and Morante argue that United States v. Issacs, 708 F.2d 1365 (9th Cir.), cert. denied, 464 U.S. 852 (1983), and United States v. Bagley, 772 F.2d 482 (9th Cir.), cert. denied, 475 U.S. 1023 (1986), preclude the government from arguing to establish possession of cocaine and to deny expectation of privacy where the circumstances of the case make such positions necessarily inconsistent. But here, the government is not taking inconsistent positions. It is perfectly consistent to argue that Lopez and Morante possessed the cocaine until Curry drove away in the Nissan, and also to argue that once Curry drove away, Lopez and Morante no longer had a legitimate expectation of privacy in the Nissan. Thus, the district court did not err in denying Lopez and Morante's motion to suppress the evidence seized from the Nissan.
 
 C.
 
 20
 Lopez and Morante also challenge the search of the residence at 705 West Hellman Avenue. They argue that the search warrant relied upon facts obtained in the search of the Nissan, and that the illegal search of the Nissan tainted the search warrant. The district court held that the search of the Nissan was lawful and, therefore, that the search warrant was valid.
 
 
 21
 We need not decide whether the Nissan search was lawful, because Lopez and Morante do not have standing to contest the search warrant on the ground that it is the "fruit of a poisonous tree." See Wong Sun v. United States, 371 U.S. 471 (1963). As we held in Dearinger v. Rhay, 421 F.2d 1086 (9th Cir.1970), because the search of the Nissan did not violate Lopez and Morante's rights, they do "not have standing to urge the illegality of [the search], and the poisonous fruit thereof, as a ground for challenging the warrant to search [their] home." Id. at 1088.
 
 III
 
 22
 Morante argues that the district court erred in allowing, over his objection, the introduction of evidence that he is a Colombian citizen. He argues that such evidence was not relevant to any material issue in the case. We review the district court's ruling for abuse of discretion. United States v. Dunn, 946 F.2d 615, 617 (9th Cir.1991).
 
 
 23
 The government argues that evidence of Morante's nationality was relevant to proving he was the Hispanic or Latin male described by three government witnesses. The government also argues it was relevant to rebut Morante's assertion that he was not the man described by those witnesses. All of the witnesses described their dealings with a heavyset Hispanic-looking man, and all said that they would have trouble identifying the man. None of the witnesses mentioned that they knew the man's national origin.
 
 
 24
 The evidence of Morante's nationality was plainly irrelevant to identifying him as the man described by the three government witnesses. The government argues that "[t]he fact that Morante was born in Colombia tended to make it more probable that he appeared to be Hispanic." We do not agree. Whether he appeared to be Hispanic depended on one factor: his appearance. There was no need to know his nationality to assess whether he looked Hispanic; he was present at the trial. The point attempted to be established was whether Morante was the man the government witnesses described. That he was Colombian made it not more probable than not that Morante was the Hispanic-looking man described by the witnesses.
 
 
 25
 Although the district court abused its discretion by admitting this evidence, the error clearly was harmless. Reversal is not required if there is a "fair assurance" that the prejudice resulting from the error did not materially affect the verdict. See United States v. Hitt, 981 F.2d 422, 425 (9th Cir.1992). Here, the government elicited one line of testimony from case agent Larson that Morante was Colombian. The government did not mention Morante's nationality in its closing argument. Considering the small amount of prejudice that might have resulted from the admission of this evidence, and the overwhelming evidence of Morante's guilt, we are confident that the error did not materially affect the verdict. See United States v. Lui, 941 F.2d 844, 848 (9th Cir.1991) (Lui ) (improper admission of drug courier profile held harmless in light of overwhelming evidence of guilt).
 
 
 26
 Morante's attempt to analogize this case to United States v. Borrero-Isaza, 887 F.2d 1349 (9th Cir.1989), is unavailing. In that case, the record clearly showed that the district court based its sentence in part on the defendant's nationality. Id. at 1355. Here, the government never argued that Morante's nationality had anything to do with his guilt. There is no indication that the jury considered Morante's nationality in reaching its verdict, and there is certainly no hint that the district court relied in any way on Morante's nationality in sentencing him.
 
 IV
 
 27
 Lopez and Morante also argue that the district court erred in not reducing their sentences to reflect their minor role in the offense. We review for clear error the district court's finding that Lopez and Morante were not minor participants entitling them to a sentence reduction pursuant to section 3B1.2 of the Guidelines. Lui, 941 F.2d at 848. Defendants must prove their status as minor participants by a preponderance of evidence, and district courts are to grant such downward adjustments infrequently. United States v. Sanchez, 908 F.2d 1443, 1449 (9th Cir.1990).
 
 
 28
 Lopez and Morante argue that they were both merely drug couriers. The record demonstrates otherwise; it indicates that both Lopez and Morante were active participants in each phase of the drug transaction with Curry. Both were involved in the counter-surveillance activities, and both were involved in picking up, loading, and delivering the Nissan Sentra. The district court did not clearly err in finding that neither Lopez nor Morante was a minor participant.
 
 V
 
 29
 Lopez and Morante contend, finally, that the district court erred by not exercising its discretion to depart downward from the applicable Guidelines range. We do not have jurisdiction to review the district court's discretionary decision not to depart downward. United States v. Jackson, No. 91-50608, slip op. 1281, 1285 (9th Cir. Feb. 18, 1993).
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4